Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 944 | **DATE** | 7/19/2002 |
| **CASE TITLE** | LARRY G. NARDONI, et al vs. DONALD MOKE, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendants Moke and Ruff's motions to dismiss Count II are both denied. Status hearing set for 8/14/02 at 9:30a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 2 2 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | 26 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | 02 JUL 22 PM 5:00 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |



# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LARRY G. NARDONI and CHRISTIANNA V. NARDONI, a minor, by her parents and guardians, LARRY G. NARDONI and NANCY L. NARDONI, <br><br> Plaintiffs, <br><br> vs. <br><br> DONALD MOKE, GERALD RUFF, PATRICK WALTER, LETICIA WALTER, and VILLAGE OF STEGER, ILLINOIS, <br><br> Defendants. | No. 02 CV 944 <br> Judge Ronald A. Guzman |

## MEMORANDUM OPINION AND ORDER

Plaintiff Larry G. Nardoni brings this action with his wife, Nancy L. Nardoni, pursuant to 42 U.S.C. § 1983 (alleging violations of the First Amendment to the United States Constitution) and Illinois common law, on behalf of himself and the couple's daughter, Christianna V. Nardoni, a minor, against Donald Moke, former principal of Central Junior High School; Gerald Ruff, a police officer employed by the Village of Steger; Patrick Walter, a Steger School Board Member and father of John Walter; Leticia Walter, mother of John Walter; and the Village of Steger, an Illinois municipal corporation. Defendants Moke and Ruff have both moved separately to dismiss Count II of plaintiffs' complaint against them. For the following reasons, both motions are denied.

## BACKGROUND

The facts of this case are taken from plaintiffs' amended complaint and for

1

purposes of these motions, will be accepted as true. Plaintiff Larry G. Nardoni ("Nardoni") was elected President of the Steger School Board on November 9, 2000. He and his supporters favored the appointment of Dr. Jackson for Superintendent and campaigned for him in the April 2001 election. Defendant Patrick Walter ("Mr. Walter"), along with others, sought election to the Steger School Board and campaigned against Nardoni. Mr. and Mrs. Walter supported Jackson's opponent, Defendant Donald Moke ("Moke"). Moke had been rejected for the position of Superintendent on three previous occasions, and Nardoni and other members had previously voted to freeze Moke's salary for one year.

Nardoni alleges that because defendants disagreed with his outspoken political support for Dr. Jackson as well as his conduct with respect to Moke's salary, they conspired to wage a "retaliation campaign" against Nardoni, which included framing Nardoni and his daughter on false criminal charges.

The first charge came about on November 29, 2000 when defendants Mr. and Mrs. Walter's son lost his necklace at basketball practice. The Walters allegedly reported false information to the Steger police, commencing juvenile proceedings against Nardoni's daughter for the theft of the necklace. A school janitor later found the necklace, and Moke was informed that the necklace was located. However, despite the knowledge of the found necklace, juvenile proceedings against Nardoni's daughter continued. Sometime around January 5, 2001, Nardoni saw defendant Gerald Ruff ("Ruff") on duty in his car. The men conversed about the necklace issue and whether the charge had been dropped. Ruff told Nardoni that it had been dropped. Nardoni

2

responded that he was going to get Moke to apologize to his wife for not keeping her informed.

Sometime around January 6, 2001, Nardoni received notice from the Cook County State's Attorney's Office that his daughter had been arrested for a crime and that her appearance was required at the courthouse. However, before the scheduled appearance date, the Nardonis were told that her appearance date had been postponed, and the charges were later dropped.

The conflict continued on or around January 12, 2001 when Ruff signed a criminal complaint against Nardoni charging him with "disorderly conduct" for "alarming Ruff and provoking a breach of the peace by making verbal threats against Moke." Nardoni alleges that Moke met with Ruff to further conspire against him and make up these threats. Subsequently, Nardoni was later served with a summons to appear in court regarding the charges. After these charges became public, Nardoni's business sales decreased, and he was asked to resign his office as School Board President. The charges were dismissed by the Circuit Court of Cook County in late March 2001 because they failed to state a claim.

Nardoni further alleges that after the charges were dropped, Ruff directed a teacher to write and distribute statements giving the impression that Nardoni was in fact guilty of the misconduct. As previously stated, this pattern of events took place during the April 2001 Steger School Board Election, and Nardoni lost his election while Mr. Walter was elected and Moke was hired as Superintendent. Plaintiffs filed this suit in February of 2002, alleging that the defendants' acts were motivated by Nardoni's exercise of his First Amendment rights, and they had a chilling effect on his First

3

Amendment activity. Plaintiffs brought four counts in their complaint but the current motions only address Count II. This count alleges that pursuant to 42 U.S.C. § 1983, Moke, Ruff, and Mr. and Mrs. Walter conspired to violate the First Amendment rights of Plaintiff Larry Nardoni. Moke and Ruff are both moving to dismiss this count in separate motions.

## DISCUSSION

When deciding a Fed.R.Civ.P. 12(b)(6) motion to dismiss, all well-pleaded factual allegations of the complaint are accepted as true and construed in a light most favorable to the plaintiff. *Midwest Grinding Co. v. Spitz,* 976 F.2d 1016, 1019 (7th Cir. 1992). If relief could be granted under any set of facts that could be proved consistent with the allegations, the claim will survive. *Hishon v. King & Spaulding,* 467 U.S. 69, 73 (1984). A Rule 12(b)(6) motion to dismiss should not be granted "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibbon,* 355 U.S. 41, 45-46 (1957).

The purpose of § 1983 is to deter state actors and private individuals in collaboration with state officials, from using a "badge of authority" to deprive individuals of their Constitutional rights. *Fries v. Helsper,* 146 F.3d 452, 457 (7th Cir. 1998). The statute says in part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C.§ 1983.

Two conditions must be satisfied for a plaintiff to have a cause of action under § 1983:

4

(1) the defendant(s) deprived him of a right secured by the Constitution or any law of the United States; and (2) the deprivation of that right resulted from the defendant(s) acting under color of law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, (1970).

Since Count II alleges a conspiracy on behalf of the defendants, not only must the requirements to bring an action under § 1983 be satisfied, but also the requirements of a conspiracy under § 1983. To establish a conspiracy two elements must be satisfied: (1) an express or implied agreement among defendants to deprive a plaintiff of his or her Constitutional rights and (2) actual deprivation of those rights in the form of overt acts in furtherance of the agreement. *Vukadinovich v. Zentz,* 995 F.2d 750, 756 (7th Cir. 1993), *Scherer v. Balkema* 840 F. 2d 437, 442 (1988).

**I. Defendant Moke's Motion to Dismiss**

Defendant Moke makes two basic arguments in support of his motion to dismiss. First, he argues that Nardoni's allegations do not bring the First Amendment into play. Because Nardoni's complaint clearly states that defendants conspired to stop him from speaking out about his political views, his First Amendment rights are implicated. More specifically, the complaint alleges that Moke was directly involved in framing Nardoni and his daughter with false criminal charges and that Moke entered into an agreement with Ruff and Mr. and Mrs. Walter, to punish Nardoni for speaking out against Dr. Jackson. The complaint further alleges that Moke encouraged Mr. and Mrs. Walter, to bring the false charge against Nardoni's daughter as well as cooperated with them to carry out the charge. Furthermore, the complaint alleges that Moke met with Ruff and planned the false "disorderly conduct" charge against Nardoni. Taking these allegation as true, it can only be concluded that plaintiffs have stated a claim for violation of their

5

First Amendment Rights under the United States Constitution. Along with this, Moke also argues that although a violation of the Fourteenth Amendment is easier to allege, Nardoni's complaint also fails in this regard because it does not allege that Moke signed a criminal complaint against Nardoni or advised Ruff or Mr. Walter to continue in their actions against Nardoni. However, this argument is irrelevant. As stated in the first footnote of Nardoni's reply to Moke's motion, Nardoni only mentions the Fourteenth Amendment because it is a necessary requirement in order for him to take action against these local officials through § 1983 and the First Amendment. Without the Fourteenth Amendment, the requirements of the First Amendment would not apply to these local officials, and Nardoni would only be able to sue them through state law claims. *Krislov v. Rednour* 226 F3d 851, 858.

Moke's second argument puts forth that Count II, when stripped of the constitutional verbiage, is really just a cause of action for malicious prosecution and that these claims are better resolved under state tort law. A review of the complaint reveals otherwise. Nardoni has set forth two different claims for malicious prosecution in Counts III and IV of his complaint pursuant to Illinois common law. Count II is different than those two counts and is an expressly stated claim in the complaint for conspiracy to violate First Amendment rights pursuant to § 1983. Nardoni's complaint states specific facts showing how the defendants conspired together to set up false charges against him and his daughter to punish him for speaking out about his political views as well as to hinder his ability to continue to speak out. Therefore, with respect to Moke, Nardoni has properly plead a cause of action for conspiracy to violate his First Amendment rights pursuant to § 1983.

## II. Defendant Ruff's Motion to Dismiss

Ruff makes only one argument in support of his motion to dismiss Count II. In Nardoni's amended complaint, Count I is a cause of action for violation of Constitutional rights under § 1983, and Count II is a cause of action for a conspiracy to violate plaintiffs' Constitutional rights under § 1983. Ruff argues that Count II essentially mirrors Count I and that the same alleged unconstitutional conduct can not be used for both counts because Nardoni can not have a double recovery. In making his argument, Ruff relies mainly on *Thomas v. Drochner,* No. 90 C 139, 1990 WL 77841 (N.D.Ill. May 18, 1990). In *Thomas*, the plaintiff alleged in one count that the defendant deprived her of her Fourth Amendment rights by falsely charging and maliciously prosecuting her for criminal child neglect and in another count that two defendants conspired to deprive her of these same rights. *Id.* at *5. Ruff is correct in arguing that the court in *Thomas* stated that the unconstitutional conduct complained of in both counts was exactly the same. *Id.* at *5. He is also correct in pointing out that the court chose not to dismiss the conspiracy count because the defendant moving to dismiss was not named as an actor in the first count. *Id.* at *5-6. However, the present case is distinguishable from *Thomas*. Unlike the plaintiff in *Thomas,* Nardoni has alleged multiple actions by Ruff. *Id.* at *5. Ruff is reading the complaint too narrowly when he concludes that both counts use the same unconstitutional conduct. Ruff allegedly did actions on his own, such as signing the complaint for Nardoni's "disorderly conduct" charge and directing a teacher to distribute statements hinting that Nardoni was guilty even after the charge was dismissed. He also allegedly performed actions in concert with Moke, and Mr. and Mrs. Walter, such as making an agreement with them to frame Nardoni's daughter with a theft charge. Due to

7

these allegations and the early stage of the case, it can not yet be said that both counts are based on the same unconstitutional conduct.

Ruff also points out that § 1983 allows recovery for conspiracy to violate a clearly established right, not for the conspiracy itself. *Villareal v. Chicago Police Officers*, No. 88 C 8208, 1997 WL 242903, at *3 (N.D.Ill. May 5, 1997). In other words, it does not create or punish conspiracy per se, only when coupled with the actual denial of a civil right. *Goldschmidt v. Patchett*, 686 F. 2d 582, 585 (7th Cir. 1982). However, Nardoni does not allege a conspiracy per se. He expressly states that he is alleging a conspiracy to violate his First Amendment rights. The constitutional right is clearly identified as are the overt acts.

Nardoni points out in his response to Ruff's motion that by arguing that Count II is the same as Count I, Ruff ignores the potential value of a separate conspiracy claim, including "its evidentiary use and its use in spreading the net of liability to additional persons." *Reddick v. Bloomingdale Police Officers*, No. 96 C 1109, 2001 WL 789432, at *5 (N.D.Ill. July 12, 2001). (quoting *Quinones v. Szorc*, 771 F. 2d 289, 291 (7th Cir. 1985)). A civil conspiracy claim can be used as a vehicle through which to impose liability on each and all of the defendants without regard to the person doing the particular act. *Hostrop V. Board of Junior College Dist. No. 515*, 523 F. 2d 569, 576 (7th Cir. 1975). Nardoni clearly chose to take advantage of this principle since Count I is only against Ruff and Count II is against Ruff, Moke, and Mr. and Mrs. Walter. It is too early to tell how the two counts will actually play out. The court in *Reddick* came to a similar conclusion when it denied the defendants' motion because the case was only in

8

the pleading stage, and it could not yet be said that the plaintiffs' counts were merely seeking a double recovery. *Reddick*, 2001 WL 789432 at *5.

Ruff also relies on *Hostrop v. Board of Junior College Dist.* No. 515, 523 F. 2d 569, 576 (7th Cir. 1975), in his reply brief. He correctly states that the court in *Hostrop* affirmed the decision in favor of the defendants in regards to the conspiracy count. *Hostrop* 523 F.2d at 576. The court stated that "the conspiracy count add[ed] nothing to the substantive count." *Id.* However, this statement was made on appeal after a bench trial in which the court found no violation of plaintiff's underlying substantive rights. *Id.* Unlike the case in *Hostrop*, the present case is only at the pleading stage, and it is not yet possible to say that there has been no violation of plaintiff's underlying constitutional rights.

## CONCLUSION

For the foregoing reasons, defendants Moke and Ruff's motions to dismiss Count II are both denied.

SO ORDERED 7/19/02      ENTERED:

HON. RONALD A. GUZMAN
United States Judge

9